393 A.2d 897

**Sandy S. BRISTOL, Appellant,**

v.

**Anna BARANYI.**

Superior Court of Pennsylvania.

Argued June 16, 1978.

Decided Oct. 20, 1978.

A. T. Gillespie, Jr., Allentown, for appellant.

No appearance entered nor brief submitted for appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH, and HESTER, JJ.

PER CURIAM:

Appellant contends that the lower court erred in sustaining appellee's exception to the master's report and in dismissing his complaint in divorce a. v. m.[1] Because we agree, we reverse the lower court's order and direct the entry of a decree of divorce a. v. m.

On May 24, 1963, appellant-husband and appellee-wife were married in Berlin, Massachusetts. They have resided in Pennsylvania since August 28, 1963. They have no children. On July 10, 1975, appellant filed a complaint in divorce a. v. m. on the grounds of indignities. The lower court appointed a master who conducted hearings on April 26 and May 26, 1976. The master's report adequately summarizes appellant's testimony:

> "(A) On numerous occasions, [appellee] would refuse to go with [appellant] to social events, including Church socials, and unfortunately, would not tell [appellant] until the very last minute and after [appellant] had purchased tickets. . . .

> "(B) After [appellant] converted to the religion practiced by [appellee], [appellee] would avoid [appellant] by going to Church at times that were different than when [appellant] would go. . . .

> "(C) [Appellee] would tell [appellant] that [appellant] was stupid and 'no better than a hillbilly' . . . .

> "(D) [Appellee] would reject bringing friends of both or either [appellant] and [appellee] into their home, and would further discourage [appellant] from friendly conversation with their neighbors

> .     .     .     .     .

> "(E) When it came to furnishings of the home and [appellant's] personal effects, [appellee] would control the final decision-making . . . .

---

1. The Divorce Law, May 2, 1929, P.L. 1237, § 10; as amended Act of March 19, 1943, P.L. 21, § 1; 23 P.S. § 10, as amended. Act of September 22, 1972, P.L. 880, No. 202, § 10.

"(F) [Appellee] directed [appellant] to sleep in a bedroom separate from [appellee] because [appellee] did not want 'to hear anybody snoring next to her, she doesn't want to breathe anybody's breath or smell anybody's perspiration odor'. . . .

"(G) For the last seven years of the marriage immediately preceding the separation of the parties, [appellee] refused to engage in any form of sexual relations with [appellant]. . . .

"(H) In June of 1974, the morning after [appellant] had gone to a social without [appellee], because [appellee] had refused to go with [appellant] at the very last minute, [appellee] told [appellant] to pack his things and leave the house because she did not want any part of him, and after [appellant] in fact left, [appellee] never sought him out for his return to the home other than to provide her with financial assistance. . . ."

Although appellee denied some of appellant's allegations, she admitted that: 1) she fought verbally with appellant, 2) after 1967, she refused to have sexual intercourse with appellant because her priest told her the parties were not married in the eyes of the Catholic Church and should divorce or separate, 3) she refused to go to parties with appellant, and 4) on the day of separation, she told appellant that she felt ashamed of him and that he should "go someplace else where nobody knows you." Throughout her testimony, appellee indicated that ill will against appellant did not motivate any of her actions and she did not believe that her actions upset appellant.

Neither party presented corroborative testimony or documentary evidence. The master believed appellant's testimony and determined that appellee's testimony confirmed or did not rebut her husband's allegations. The master further determined that appellant sustained his burden of proving indignities and, consequently, recommended that the lower court grant a divorce a. v. m. Appellee filed exceptions. On

October 6, 1977, the lower court sustained appellee's exceptions and, accordingly, dismissed his complaint. This appeal followed.

■ Appellant first contends that the lower court failed to give proper consideration to the master's report. *DeBias v. DeBias,* 245 Pa.Super. 266, 272, 369 A.2d 396, 399 (1976) describes this Court's scope of review in non-jury divorce cases:

"It is the duty of this court, on appeal, to make an independent evaluation of the record and to determine if a legal cause of action for divorce exists. *Steinke v. Steinke,* 238 Pa.Super. 74, 357 A.2d 674 (1975); *Dougherty v. Dougherty,* 235 Pa.Super. 122, 339 A.2d 81 (1975). On the other hand, while the findings and recommendation of the master are only advisory, where the issue is one of credibility and the master is the one who heard and observed the witnesses, his findings should be given the fullest consideration. *Schrock v. Schrock,* 241 Pa.Super. 53, 359 A.2d 435 (1976); *Gehris v. Gehris,* 233 Pa.Super. 144, 334 A.2d 753 (1975)."

Especially in a case which amounts to little more than a swearing contest between the parties in which there is no corroborative evidence, our Court must accord great weight to the master's findings. *Ryave v. Ryave,* 249 Pa.Super. 78, 85, 375 A.2d 766, 770 (1977).

The instant case amounts to little more than a swearing contest, and, therefore, the lower court should have accorded great weight to the master's credibility findings. Nevertheless, the lower court impermissibly substituted its own credibility findings for those of the master. Our independent review of the record supports the master's findings as to the credibility of appellant's testimony.

Appellant also contends that the lower court erred in finding appellant's evidence insufficient to establish a course of conduct by appellee amounting to indignities. We agree.

In order to obtain a divorce a. v. m. on the ground of indignities, a party must meet the standards of § 10(f) of the Pennsylvania Divorce Law, which provides that ". . . it shall be lawful for the innocent and injured spouse to obtain a divorce from the bond of matrimony, whenever it shall be judged . . . that the other spouse: . . . (f) Shall have offered such indignities to the person of the injured and innocent spouse, as to render his or her condition intolerable and life burdensome; . . ."[2] Our Courts have long held that:

> " 'Indignities may consist of vulgarity, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, malignant ridicule, and every other plain manifestation of settled hate and estrangement. . . .' . . .
>
> [T]hey must consist of such a course of conduct as is humiliating, degrading and inconsistent with the position and relation as a spouse." (citations omitted).

*McKrell v. McKrell,* 352 Pa. 173, 180, 42 A.2d 609, 612 (1945). *See Schrock v. Schrock, supra; Foder v. Foder,* 221 Pa.Super. 321, 292 A.2d 485 (1972). This Court has further indicated that when each individual act complained of does not, by itself, sustain a finding of indignities, a reviewing court must examine the proved acts collectively to determine whether a party has established sufficient grounds. See *Schrock v. Schrock, supra* at 60, 359 A.2d at 439; *Dougherty v. Dougherty, supra.* Thus, in *Gerenbeck v. Gerenbeck,* 199 Pa.Super. 410, 416, 186 A.2d 49, 52 (1962), this Court found that while "nagging, . . . surliness, a disagreeable disposition or other antagonistic attitude in themselves do not constitute indignities . . ., where such actions or combination of them are an affront to the personality of the other spouse or manifest a lack of reverence for the personality of the other spouse and when these offenses are continued or persisted in, such conduct clearly demonstrates that the love and affection upon which the matrimonial

**2.** The Divorce Law, *supra;* 23 P.S. § 10(f).

status rests have been permanently replaced by hatred and estrangement." (citations omitted). Similarly, this Court has found withdrawal from the injured party and friends, rare communication with the injured party, failure to participate in any of the injured spouse's activities and no show of love or affection to be probative of indignities. *Peter v. Peter*, 208 Pa.Super. 221, 222 A.2d 511 (1966). *See Schware v. Schware*, 192 Pa.Super. 166, 159 A.2d 568 (1960). Although this Court has never found consistent refusal to have sexual relations to be itself an indignity, it has considered such circumstance, if proved, with all the other evidence to determine whether the injured party's condition has been made intolerable and his life burdensome. See *Hillegas v. Hillegas*, 248 Pa.Super. 210, 375 A.2d 61 (1977); *Dougherty v. Dougherty, supra; Sells v. Sells,* 228 Pa.Super. 331, 323 A.2d 20 (1974).

After reviewing the record in the instant case, we believe that appellant introduced sufficient credible evidence to sustain a finding of indignities. Appellant testified that appellee constantly belittled his intelligence and his taste. She made him feel as though he had no rights in his own home. She discouraged appellant from having any contact with neighbors or fellow church members, and was herself withdrawn from appellant. Although appellee stated that the parties' sexual relations ended because of her religious convictions, the record supports the inference that she desired to avoid appellant physically before her deep and admittedly sincere involvement with the Catholic Church. Based on our review of the record, we hold that, viewed cumulatively, appellee's course of conduct was sufficient to establish indignities.

The order of the lower court is reversed, and the court below is directed to enter a decree granting the divorce.

HOFFMAN, J., did not participate in the consideration or decision of this case.