Anderson *v.* Anderson, Appellant.

Argued November 17, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ. (GUNTHER, J., absent).

*Albert G. Driver,* for appellant.

*Allen J. Levin* and *Sundheim, Folz, Kamsler & Goodis,* for appellee, submitted a brief.

OPINION BY ROSS, J., January 20, 1953:

In this divorce action, brought by the husband on the ground of indignities to his person, the master who heard the case recommended a divorce, the court below dismissed the wife's exceptions to the master's report, and she has appealed to this Court.

The parties are natives of New Jersey and were married in Camden on December 1, 1946, where plaintiff secured employment. After the marriage they moved into the home of defendant's parents in Camden. During the first year friction developed between defendant and her father because of the latter's habit of drinking excessively, and frequent arguments ensued between them, many of them at the dinner table. Defendant's brother and sister-in-law were for a time

members of the household and were often involved in the dinner table arguments. Aside from the defendant's conduct toward the plaintiff, which will be discussed later, it is evident that the family atmosphere was, to state it mildly, most unpleasant for the plaintiff. In April 1950 he left the Camden home and moved into the Y.M.C.A. in Philadelphia, becoming a permanent guest, and has since then lived there continuously except for a period of three weeks when he was a medical patient at the Philadelphia Naval Hospital. After the separation plaintiff continued to work in Camden until he was able to secure employment with the Budd Company in Philadelphia, where he is presently employed.

Primarily, the appellant—as she did in her answer to the complaint and in the court below—questions the jurisdiction of the court to entertain this action, contending that the plaintiff was not a bona fide resident of Pennsylvania for a period of at least one year prior to the date of filing his complaint, as required by section 16 of the Act of May 2, 1929, P. L. 1237, 23 PS sec. 16. The complaint was filed on September 4, 1951.

As the basis of her contention that the plaintiff did not meet the necessary residence requirement, defendant points to the fact that he filed his Federal income tax returns for 1950 and 1951 in New Jersey, that he holds an operator's license and registration plates for his automobile from New Jersey, and that he has filed no Philadelphia wage tax. These are circumstances to be considered but they are not controlling. It is undisputed that since the separation in April 1950 plaintiff has maintained continuous residence in the Y.M.C.A. in Philadelphia. Furthermore, the master made independent inquiry and found plaintiff's residence to be as stated in the complaint, and as in *Wiggins v. Wiggins,* 171 Pa. Superior Ct. 298, 90 A. 2d 275,

the plaintiff's presence at his claimed residence when the master called is an important factor in the proof of such residence. The proof of change of a domicile does not depend upon any particular fact but upon whether all the facts taken together tend to establish a new, fixed and permanent residence. *Verbeck v. Verbeck,* 160 Pa. Superior Ct. 515, 52 A. 2d 241. We agree with the learned court below that "An examination of the record in this case, in our opinion, establishes the necessary domiciliary intent and the fact that plaintiff was a 'bona fide resident' of Pennsylvania for 'at least one whole year immediately previous to the filing'" of his complaint. Consequently, the lower court properly exercised jurisdiction.

On the merits of the case, the testimony shows a clear case of indignities. There was the usual charge of frequent name-calling, both in public and in private, which the defendant did not deny. There is testimony, believed by the master, of physical assault upon the plaintiff and persistent and interminable threats to kill herself and him by asphyxiation. In addition, the record discloses repeated and unfounded accusations of infidelity which started during the early part of 1949 and were directed against the plaintiff by the defendant. The real source of contention between the parties seems to have stemmed from defendant's dissatisfaction with plaintiff's habit of spending his Friday nights playing cards with male companions. Defendant habitually waited up for him and when he returned would upbraid him, loudly voicing suspicion that he had been in the company of other women. Plaintiff denied the accusation and suggested that she check on his whereabouts and the identity of his associates. The record is entirely devoid of evidence tending to show that during the time the parties lived together, or since, plaintiff was ever guilty of misconduct with

other women or that he gave her grounds for reasonable belief that he was. Defendant testified that she did not verify plaintiff's account of how he spent his Friday evenings and admitted that she never suspected him of having an affair with another woman, but that because she was angry she made the accusations nevertheless. It is well settled that when the accusing spouse so conducts himself with other women that the wife has just reason to be suspicious, her accusations furnish no support to the charge of indignities to the person (*Parcella v. Parcella,* 165 Pa. Superior Ct. 218, 67 A. 2d 576; *Cunningham v. Cunningham,* 171 Pa. Superior Ct. 577, 91 A. 2d 301), but in the present case defendant's testimony rebuts her present claim of provocation for her accusations, and she is bound by the principle that continuous unfounded accusations of infidelity when accompanied, as here, by other degrading or humiliating conduct, persisted in for a sufficient length of time, make out a case of indignities. *Turner v. Turner,* 171 Pa. Superior Ct. 519, 89 A. 2d 893; *Horton v. Horton,* 170 Pa. Superior Ct. 209, 85 A. 2d 602.

Plaintiff testified that since the marriage he had developed bleeding ulcers and had been hospitalized "four or five times starting a year or so after being married. They have continued on through until our separation. I was in the hospital three to four weeks at a time. I was separated in April of 1950 and my health started to improve up until the present time . . . ." That plaintiff's health was impaired by cohabitation with the defendant is in itself strong supporting evidence of indignities. *Clark v. Clark,* 160 Pa. Superior Ct. 562, 52 A. 2d 351; *Glick v. Glick,* 170 Pa. Superior Ct. 142, 84 A. 2d 248.

Appellant contends that plaintiff's testimony is uncorroborated and quotes *Friess v. Friess,* 156 Pa. Superior Ct. 38, 39 A. 2d 151, at page 43: " 'A decree may

be supported by the testimony of the complainant alone, but if this testimony be contradicted and shaken by the respondent and there be no convincing circumstances warranting a disregard of the contradictory evidence, a case has not been made out.' " The short answer to this argument is that we do not regard plaintiff's testimony as "shaken by the respondent".

The parties themselves were the only witnesses at the hearing and their credibility must, of necessity, be a crucial factor in arriving at our decision. The master concluded that plaintiff's testimony was credible "to the full extent" and that "defendant in her extreme desire to keep her husband, whether because of affection or possessiveness might have testified, although subconsciously, to anything she felt might have won her point" and that she was not worthy of belief. The master had the advantage of seeing and hearing the parties and of observing their demeanor on the witness stand. His rulings on credibility are, therefore, to be given full consideration and are not lightly to be disregarded (*Smith v. Smith,* 157 Pa. Superior Ct. 582, 43 A. 2d 371; *Lupowitz v. Lupowitz,* 169 Pa. Superior Ct. 581, 83 A. 2d 501), and this is especially true where there is scant corroboration of the testimony of the parties. *Wiggins v. Wiggins,* supra, 171 Pa. Superior Ct. 298, 90 A. 2d 275.

We agree with the learned court below that the "Plaintiff has shown a continuous course of conduct by defendant, inconsistent with her duties as a spouse, which has made his condition intolerable and rendered his life burdensome and therefore is entitled to a divorce from defendant."

Decree affirmed.