431 A.2d 1085

**Earl H. BROWN**

v.

**Gloria R. BROWN, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 10, 1980.

Filed July 2, 1981.

Jeff Letwan, Pittsburgh, for appellant.

Charles P. Voelker, Pittsburgh, for appellee.

Before HESTER, BROSKY and VAN der VOORT, JJ.

PER CURIAM:

Presently before the court is appellant's appeal from the order of the lower court dated January 24, 1980, dismissing appellant's exceptions to the Master's Report and granting a Decree in Divorce in favor of the appellee and against the appellant on the grounds of indignities to the person.[1]

The facts may be briefly summarized as follows: The parties were married in Allegheny County on April 11, 1969. No children were born of the marriage. Subsequent to a second separation between the parties when the appellee removed himself from the marital domicile,[2] he filed for divorce. Following the close of pleadings, including the filing of a Bill of Particulars and Answers to Interrogatories, a Master in Divorce was appointed. Testimony was taken on August 8, 1979 and September 6, 1979. Appellee testified on his own behalf and also called a private detective to testify. Appellant testified on her own behalf and further called her employer and three women friends.

At the close of testimony, the Master issued his report recommending that a divorce be granted in favor of the appellee and against the appellant on the basis of indignities

---

1. Act of May 2, 1929, P.L. 1237 § 10 as amended by the Act of March 19, 1943, P.L. 21 § 1 (23 P.S. § 10(f)).

2. The marital home was owned by the appellant prior to her marriage to appellee and during the marriage the deed remained in her name alone.

to the person. Appellant thereafter caused timely Exceptions to be filed which were subsequently dismissed by Order of the lower court dated January 24, 1980. It is from this Order that the instant appeal has been taken.

We reverse and dismiss the Complaint in Divorce.

Before addressing ourselves to the gravamen of this appeal, we must again reiterate our scope of review. As is artfully stated in *Schrock v. Schrock*, 241 Pa.Super. 53, 57, 359 A.2d 435, at 437–8 (1976):

> . . . we must initially note that it is our duty, on appeal, to make an independent study of the record and to determine whether a legal cause of action for divorce exists. *Barr v. Barr*, 232 Pa.Super. 9, 331 A.2d 774 (1974); *Arcure v. Arcure*, 219 Pa.Super. 415, 281 A.2d 694 (1971). Moreover, while the master's findings of fact and recommendation that a divorce be granted are only advisory, where the issue is one of credibility and the master is the one who heard and observed the witness, his findings should be given the fullest consideration. *Gehris v. Gehris*, 233 Pa.Super. 144, 334 A.2d 753 (1975); *Sells v. Sells*, 228 Pa.Super. 331, 323 A.2d 20 (1974). Thus, in a case such as this, "[i]f the ultimate decision rests on a statement asserted by one party and denied by the other, where there is no corroborative evidence, demeanor on the stand is necessarily dispositive of the issue and is the kind of evidence that cannot effectively be reviewed by an appellate court. (citations omitted)." *Gehris v. Gehris*, supra, 233 Pa.Super. at 148, 334 A.2d at 755.

> . . . As we have previously stated: " 'No general rule can be formulated as to what constitutes indignities in a particular case; such matters depend upon all the circumstances of the particular case . . . .' "

*Sells v. Sells*, supra, 228 Pa.Super. at 333–34, 323 A.2d at 22, quoting *Margolis v. Margolis*, 201 Pa.Super. 129, 133, 192 A.2d 228, 230 (1963). Realizing that no strict test applies, the Pennsylvania Supreme Court has delineated a framework of conduct within which we may examine to see if indignities are present: " 'Indignities may consist of

vulgarity, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, malignant ridicule and any other plain manifestation of settled hate and estrangement: (citations omitted).' " *McKrell v. McKrell*, 352 Pa. 173, 180, 42 A.2d 609, 612 (1945), quoting *Martin v. Martin*, 154 Pa.Super. 313, 317, 35 A.2d 546, 548 (1944) (emphasis added). The court in *McKrell* further explained that indignities, in all cases, "[m]ust consist of such a course of conduct as is humiliating, degrading and inconsistent with the position and relation as a spouse." *McKrell v. McKrell*, supra, 352 Pa. at 180, 42 A.2d at 612. See *Steinke v. Steinke*, 238 Pa.Super. 74, 357 A.2d 674 (1975).

Indignities as a ground for divorce, is a two-edged sword. 23 P.S. § 10(f) provides in relevant part:

. . . it shall be lawful for the *innocent and injured spouse* to obtain a divorce from the bonds of matrimony, if . . the other spouse: . . . (f) shall have offered such indignities to the person of the *injured and innocent spouse*, as to render his or her condition intolerable and life burdensome;" (Emphasis supplied).

 It is thus incumbent upon the moving party to prove indignities on the part of the other as well as the fact that he was the injured and innocent spouse. A finding that the moving party is the innocent and injured spouse is a prerequisite for entitlement to a divorce based upon the grounds of indignities. A "dull" or "strained and distant relationship" does not satisfy our statutory mandate. As we reiterated in *Howard v. Howard*, 260 Pa.Super. 257, 260, 393 A.2d 1251, 1253 (1978):

A decree of divorce is not warranted because the marriage is no longer a happy one or because the parties no longer get along well together. *Fodor v. Fodor*, 221 Pa.Super. 321, 292 A.2d 485 (1972). Rather, a plaintiff must establish a course of conduct on the part of the defendant which would render the condition of life intolerable by evidence from which an inference of settled hate and estrangement can be deduced. The plaintiff must also

show himself to be the injured and innocent spouse. *Regan v. Regan*, 227 Pa.Super. 552, 322 A.2d 711 (1974).

■ We have carefully reviewed the entire record before us and conclude that appellee failed to sustain his burden of proving that he was both the injured and innocent spouse. We are convinced that appellee's excessive drinking habits and the natural consequences thereof, his general and continual state of uncleanliness, his continual, unexplained habit of staying out late at night, and his abusive language towards the appellant, when considered together, lead us inexorably to conclude that the appellee was neither an innocent nor injured spouse.

In this case, there is more in the record than the testimony of the spouse. Lois Stewart testified that when in the parties' home, the appellee was "very sloppy, dirty and usually he was slightly intoxicated." (T. 132). Mrs. Stewart testified that she viewed this pattern of activity over the years at least 50 times. She also testified of her own personal knowledge the appellee often verbally abused the appellant. (T. 144).

Alice Beiswenger also confirmed that she observed the appellee in a drunken condition, and that he was always in a general state of uncleanliness. Confirming that fact, she testified that she often saw the sheets which were on appellee's side of the bed and they "were actually black" (T. 144). Mrs. Beiswenger testified that she knew the appellee before the parties' marriage and he kept himself clean at that time.

Finally, Jean Lewniczak testified that she was at the Brown's residence over a course of many years at least once or twice a week, that the appellee's physical condition was dirty and "unkempt" (T. 167).

We therefore conclude that the appellee failed to prove by a preponderance of the credible evidence not only that the appellant by a course of conduct rendered his condition intolerable and his life burdensome, but that he, the moving party, was also the innocent and injured spouse. See *Bred-*

*benner v. Bredbenner,* 175 Pa.Super. 580, 107 A.2d 169 (1954); *Kramer v. Kramer,* 194 Pa.Super. 538, 168 A.2d 624 (1961).

Order reversed. Complaint in Divorce dismissed.